FANNY CASIANO SALES ET AL., Plaintiffs and Appellants, v.
ISMAEL LOZADA TORRES, doing business under the name
YAGÜEZ JALOUSIES, Defendant and Appellee.

No. R-62-230. Decided November 30, 1964.

474

*E. Alemañy Fernández* for appellants. Appellee did not appear.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Plaintiffs-appellants alleged in the Superior Court of Puerto Rico, Mayagüez Part, that the industrial process of a certain factory property of defendant-appellee, consisting in the manufacture and painting of metal windows and doors, and said factory being located near the residence of plaintiffs-appellants, prevents them from the comfortable enjoyment of their property, thereby impairing their well-being, as a result of the noise produced by the workers in the factory, the engines, and the handling of · the metal sheets for a period of fourteen or fifteen hours daily, except Sundays, and of the paint particles that penetrate into plaintiffs-appellants' residence affecting their health and causing damage to their property.

In relation to the noises, the trial court considered as proved the following points: "As to plaintiffs' complaint of having suffered damages by reason of the noises produced by the workers of said factory, we do consider as proved the fact that plaintiffs have suffered annoyances and inconveniences, although not since 1957 as alleged in the complaint, but since 1960 when defendant enlarged the factory extending it to the back thereof at a short distance from plaintiffs' residence, it having been also proved that plaintiffs called his attention several times as to this matter and he did not take any steps to remedy the evil. The evidence showed that quite often the painters worked on the back part of the factory (in the) painting room until 9:00 p.m., causing the natural annoyance to plaintiffs with the noise produced in moving the windows and their loud conversation, the court having further verified in the inspection of

the premises while watching several workers performing different ordinary operations in the manufacture of said windows that, although the machines used in the daytime in the different phases of the operation do not produce intense noises, the workers do produce strident and loud noises when they throw to the floor the aluminum sheets of said windows as soon as each worker finishes the specific operation assigned to him; although it must be considered that the machinery is situated more or less in the center of the shop, at least 100 feet from plaintiffs' house, and said work is performed only between 8:00 a.m. and 5:00 p.m., at which time there can be heard in the neighborhood the natural noises produced by vehicles and other noises, for which reason we consider, that, although said noises may constitute some annoyance to plaintiffs Fanny Casiano and Genoveva Casiano, who are the persons usually staying at home all the time, said annoyance is not of such a degree to constitute a serious prejudice to the health of said plaintiffs who, as shown by the evidence, have always enjoyed good health, although it is unquestionable that said noises must have had adverse effects on the peace of said plaintiffs from the time the factory was extended in the rear in 1960 up to the present."

As to the disturbances that the painting industrial operations may have caused plaintiffs' health, the trial court determined the following: "The aforementioned painting room is small, closed on three sides and with an exhaust fan at the rear which is supposed to extract the paint fumes and draw them out through a chimney on the northwestern corner of the factory, about 50 feet from plaintiff's house; but, precisely, due to the fact that the front part of the room is open, in painting (the) windows with spray guns the paint fumes come out not through the back, through the exhaust fan, but also by the front and through the back wall of the factory, which as may be clearly seen from the

photograph which is exhibit 2, is not a sealed wall, said paint fumes saturating the wall and the trees which are close to the northwestern corner of the factory, this judge having observed in the inspection made that neither the trees, which stand between plaintiffs' house and said painting room, nor the north wall of plaintiffs' house, which is an old, unpainted wall and which is closest to the painting room, nor a small outhouse situated between plaintiffs' house and said painting room, had the least amount of paint adhered to the surface thereof, this being a clear indication that the air currents predominating in that place consistently carry said paint fumes towards the north, that is, towards the side opposite plaintiffs' house, which is situated on a little higher level than the factory, we are constrained to decide, in view of said facts, that no prejudice has been suffered by plaintiffs by reason of the supposed paint fumes which as alleged in the complaint entered plaintiffs' residence.[1]"

As essential conclusion of law the trial court made use of the doctrinal exposition of the case of *Arcelay* v. *Sánchez*, 77 P.R.R. 782, 790 (Sifre) (1955) which establishes: "Although in determining whether or not a certain venture constitutes a nuisance, the vicinity in which it is located is a relevant factor; and, notwithstanding the fact that persons who reside in districts where commercial and industrial establishments are operated, which are engaged in activities necessary and convenient for the public welfare and social progress, must put up with the natural and incidental annoyances and inconveniences caused thereby, without any legal remedy to avoid it, such fact in nowise implies that they are devoid of all protection if such activities, by the

---

"[1] It is possible that on certain occasions the characteristic odor of the paint may reach plaintiffs' house and perhaps some things in said house may have been slightly spotted, but no damage could have been caused to plaintiffs by said minimum quantity of paint fumes, and the damage which said few articles may have suffered according to plaintiffs, and of which we are not convinced, is of very little value."

manner in which they are conducted, exceed the bounds of reasonableness and, as a result, the right which they also have to the comfortable enjoyment of life or property is destroyed or impaired, imposing a burden greater than they ought to be required to bear, thereby upsetting the equilibrium or balance necessary to harmonize the parties' correlative rights. When the balance is upset 'by an activity which exceeds the bounds of reasonableness and does substantial and disproportionate injury to the peaceful possession of others, such activity is said to be a nuisance.' [Citations.] *The injury must be real and appreciable,* because the law does not concern itself with slight inconveniences and petty annoyances, or mere trifles. IV Restatement of the Law, Torts, 229. 'Life in organized society, and especially in populous communities, involves an unavoidable clash of individual interests. Practically all human activities, unless carried on in a wilderness, interfere to some extent with others or involve some risk . . . ,' but 'where the harm or risk to one is greater than he ought to be required to bear under the circumstances,' IV Restatement of the Law, Torts, 231, liability is imposed upon the responsible party *if it is shown that the other person's rights have been seriously impaired.*" (Italics by the trial court and not ours.)

Applying the doctrine of *Arcelay v. Sánchez* to the facts in this case, the trial court holds: "In the light of those principles, we are of the opinion that defendant has been operating said factory since 1960 up to the present without taking certain simple precautions to avoid noises not necessarily inherent in the operation of this industry, unnecessarily disturbing plaintiffs' peaceful enjoyment of their home, plaintiffs being entitled to have restrictions imposed on defendant in the operation of said industry in order to put an end to said nuisances, § 277 of the Code of Civil Procedure, although we are of the opinion, on the other hand, that it is not proper to order defendant to pay damages,

since the nuisances caused to plaintiffs by the factory noises have not been of such magnitude to affect their health, or to be considered as a serious nuisance for the peaceful enjoyment of their home . . . wherefore . . . , 1—Defendant is enjoined, under pain of contempt, to perform any kind of manufacturing work or window painting in the factory object of this action before 7:00 a.m. or after 6:00 p.m. unless he takes the necessary steps to close hermetically all the back part and southern side of the factory, in order to keep the noises from coming out. 2—Defendant is ordered to take the necessary steps to prevent, during the normal course of operation of this factory, his employees and workers from throwing the window sheets and windows, the raw material or tools in such a manner that they produce loud noises or perform any other activity which may produce unnecessary noises or which may be offensive to plaintiffs' decorum. 3—The claim for damages filed by plaintiffs is dismissed. 4—Defendant is ordered to pay costs, excluding attorney's fees."

Subsequent to the judgment, plaintiffs, appellants herein, requested the trial court to include also the following findings of fact: "(a) The chimney of the factory, allegedly used to discharge the paint fumes into the air, does not appear in the photographs offered and admitted in evidence as exhibits 1 and 2, and, likewise, in the inspection made on the premises, it was established that in said place there was no such chimney in operation, but some remnants of tin sheets completely separated from the place or hole through which the paint vapors or fumes were supposed to be discharged, and if there ever existed any chimney it was completely dismantled. (b) The hole or place through which the paint fumes were supposed to be discharged and where a chimney should exist is in front and under the trees, which according to the inspection were saturated with paint. (c) Defendant did not introduce any evidence to establish that the air cur-

rents were blowing toward the northern part of the factory, that is, in the opposite direction to plaintiffs' house, and that the decision of the court on this point was based on the fact that the trees on the northeastern part of the factory were saturated with paint. (d) Dr. Rafael Muñoz, expert for plaintiffs, who performed the analysis to determine the injurious substances in the air inside plaintiffs' house, stated that in said place there was a concentration of toluene, one of the components of the paint, which fluctuated between 50 and 180 parts per million; and Dr. Muñoz further stated that a concentration of 200 parts per million of toluene in the atmosphere was permissible and safe for human living and that a concentration of less than 200 per million of said compound could, under certain circumstances, cause injurious effects. (e) On the northern part of the factory there exists a concrete wall erected by defendant to separate the factory from a lot and house owned by Hipólito Pérez, said wall having been constructed at the request of Pérez as a result of the noises and paint fumes coming from the factory. (f) That the house where plaintiffs live was constructed about 30 years ago."

■ In deciding this motion the trial court added to the findings of fact proved, the first additional determination proposed by plaintiffs, that is: "The chimney of the factory allegedly used to discharge the paint fumes into the air, does not appear in the photographs offered and admitted in evidence as exhibits 1 and 2, and likewise, in the inspection made on the premises, it was established that in said place there was no such chimney in operation, but some remnants of tin sheets completely separated from the place or hole through which the paint vapors or fumes were supposed to be discharged, and if there ever existed any chimney it was completely dismantled," and denied the others. It is convenient to state that the facts proposed in the additional findings of fact are covered by the evidence, and it does not

appear from the evidence that the proposed facts were contradicted, in which case, they should be considered as facts judicially established: *Comm'r of Education* v. *Dist. Court; Feliciano, Int.*, 74 P.R.R. 306, 319 (Sifre) (1953).

On review, plaintiffs-appellants assign as the only error of the trial court its having decided, as it did, that notwithstanding the fact that there existed a nuisance within the legal meaning of said term in § 277 of the Code of Civil Procedure of Puerto Rico, plaintiffs-appellants were not entitled to recover damages. We have elaborated more than necessary in the exposition of the antecedents of the case, because in view of the result obtained by the trial court in strictly applying the rule established in *Arcelay* v. *Sánchez, supra*, it may be convenient to comment said decision.

The law applicable to this case is § 277 of the Code of Civil Procedure of Puerto Rico: 32 L.P.R.A. § 2761 (p. 335) which provides: "Anything which is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action. Such action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

■ After examining the doctrinal exposition of the case of *Arcelay* v. *Sánchez* as a whole it can be categorically affirmed that said case does not seek to restrict the beneficial effects of § 277 of the Code of Civil Procedure of 1904, or make a distinction as to the compensability based on the seriousness of the damages. The case of *Arcelay* v. *Sánchez* following the American industrial circumstance more than our own, object of careful public planning, has for its purpose to find that mutuality of the benefit between the

public interest and the private prejudice, that juridical equilibrium indispensable in every fair Law, which permits our courts to adopt the restrictive measures in the operation of the industrial processes which are compatible with the reasonable enjoyment of the property and personal welfare, authorizing the compensation of damages caused by the unrestricted operation of the industrial process until the very instance of the trial.

■ It is true that when certain concepts of a doctrine are taken separately, a precedent contrary to its true spirit may be obtained, one of the golden rules of the Digest being to work with the whole text of the law before determining its applicability. We notice that from the text copied above from the case of *Arcelay* the trial court points out, as the key concepts for the construction, the following words: "substantial"; "the injury must be real and appreciable"; "If it is shown that the other person's rights have been seriously impaired." Now let us see how the construction changes by limiting the concept when said concept is taken as a whole: "such fact in nowise implies that they are devoid of all protection if such activities, by the manner in which they are conducted, exceed the bounds of reasonableness and, as a result, the right which they also have to the comfortable enjoyment of life or property is destroyed or impaired, imposing a burden greater than they ought to be required to bear, thereby upsetting the equilibrium or balance necessary to harmonize the parties' correlative rights. When the balance 'is upset by an activity which exceeds the bounds of reasonableness and does *substantial* and disproportionate injury to the peaceful possession of others, such activity is said to be a nuisance' . . . . *The injury must be real and appreciable,* because the law does not concern itself with slight inconveniences and petty annoyances, or mere trifles."

 We are compelled to make a short parenthesis to add that in the concept "the injury must be real and appreciable" there is an error in the translation of the meaning from the original text in the English language from which the writer of the opinion makes his comment. The English text says: *"By substantial invasion is meant an invasion that involves more than slight inconvenience or petty annoyance. The law does not concern itself with trifles and therefore there must be a real and appreciable interference with the present usability of a person's land before he can have a cause of action under the rule here stated."* As may be seen the exact sense in which the concept *substantial* is used in Restatement of the Law is something different from a slight inconvenience or petty annoyance and the concept *real and appreciable* translated as *real y notable* should be understood as something true and perceptible to the senses. And as to the meaning to be attributed to the concept *trifles—bagatela, menudencia—*it is well to remember that all these idiomatic expressions on trifles are inspired in the old pragmatical maxim *"De minimis non curat lex"* and in relation to seriousness they refer to the infinitesimal errors, and pursuant to the case law, we can accept the statement, that even if the pragmatical rule tries to avoid every litigation on trifles, it is the traditional propensity of a court of equity to dispense some just and feasible remedy where a right exists: *Swicegood* v. *Feezel,* 196 S.W.2d 713, 716 (Burnett) (1946); *McCullough* v. *Hartpence,* 58 A.2d 233, 234 (Jayne) (1943).

In applying § 277 of our Code of Civil Procedure, two purposes must be accomplished: (1) abate the nuisance to such an extent as to be compatible with the enjoyment of the property, and (2) compensate the damages caused up to the time of the trial. The existence of a nuisance bears relation of cause and effect on the damage suffered. In case

of minimum damages, the annoyance being also minimum, the only concern is the amount of the compensation.

■ Now, then, having compared the set of facts presented in the case of *Arcelay*—a plant for the pasteurization of milk—with the facts in this case—a factory for the construction and painting of metal windows and doors—we believe that in this case plaintiffs-appellants should also be compensated for the noises and injurious substances circulating in the air inside their own house. Although the amount was not sufficient to produce poisoning, it was sufficient to create a nuisance resulting in vomiting, dizzy spells and some other physical ailment.

For the reasons stated, the judgment rendered by the Superior Court of Puerto Rico, Mayagüez Part, on August 17, 1962 will be modified in the sense of ordering the reinstallation of a chimney at defendant's factory, raising it a height that might avoid the circulation of injurious substances in plaintiffs-appellants' residence and awarding plaintiffs-appellants' the amount of $3,500 for damages suffered up to the time of the trial, including costs and $700 attorney's fees.